La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
En este caso nos corresponde determinar el foro ade-cuado para canalizar una solicitud relacionada a la bonifi-cación a la que tiene derecho una persona convicta de de-lito por el tiempo que estuvo privada de su libertad antes de comenzar a cumplir su sentencia en una institución co-rreccional en Puerto Rico. La peticionaria fue convicta en Puerto Rico tras ser detenida fuera de nuestra jurisdicción en cumplimiento de una orden de arresto emitida por un tribunal puertorriqueño y reclama que se abone a su sen-tencia el tiempo durante el cual estuvo privada de su liber-tad antes de su extradición, a pesar de haber retado el proceso de extradición. Alega, además, que se le debe abo-nar a la sentencia el tiempo que estuvo detenida fuera del Estado Libre Asociado, en espera de extradición, porque evadió nuestra jurisdicción mientras se ventilaba el juicio en su contra y se le arrestó después de dictada la sentencia.
I
Dado que ninguno de los foros inferiores hizo determi-naciones de hecho ni llevaron a cabo vistas evidenciarías, reproducimos las alegaciones de la señora Contreras Seve-rino según constan en sus alegatos y en los documentos *650 complementarios que presentó en su recurso ante este Tribunal/[1])
El 21 de agosto de 2000, la peticionaria no compareció al acto de lectura de acusación por violaciones al Artículo 401 de la Ley de Sustancias Controladas de Puerto Rico([2]) Por consiguiente, se emitió una orden de arresto en su contra([3]) A consecuencia de esa orden, el 26 de noviembre de 2001 se detuvo a la señora Contreras Severino en el estado de Nueva York([4]) La peticionaria retó su extradi-ción, lo que requirió que el Estado presentara una de-manda formal ante las autoridades neoyorquinas. Final-mente, fue extraditada a Puerto Rico el 19 de marzo de 2002.([5]) Es decir, estuvo recluida durante ciento catorce días en Nueva York por la orden de arresto emitida en Puerto Rico. Al llegar a la Isla, fue ingresada en prisión([6]) Posteriormente, el Tribunal de Primera Instancia decretó la liberación de la peticionaria ya que llevaba más de seis meses sumariada, en violación a la disposición constitucio-nal sobre detención preventiva([7]) Para llegar a esa conclu- *651 sión, el foro primario sumó el tiempo que la señora Contreras Severino estuvo encarcelada en Nueva York y el periodo durante el cual estuvo ingresada en Puerto Rico, producto de los mismos cargos.([8])
El 3 de julio de 2002, mientras se ventilaba el juicio en su contra, el foro primario emitió una orden de arresto contra la peticionaria y la declaró prófuga por haber abando-nado la jurisdicción. El 27 de agosto de 2002 se dictó una sentencia en ausencia mediante la cual se condenó a la señora Contreras Severino a treinta años de cárcel por vio-lar el Artículo 401 de la Ley de Sustancias Controladas,![9]) es decir, el mismo cargo por el cual se le arrestó el 26 de noviembre de 2001. El 30 de noviembre de 2002, la peticio-naria fue arrestada en el estado de la Florida y extraditada a Puerto Rico el 16 de diciembre de ese año. Por lo tanto, estuvo diecisiete días ingresada en Florida, producto de la orden de arresto de 3 de julio y la sentencia en ausencia que se dictó el 27 de agosto. Una vez regresó a Puerto Rico, ingresó a prisión para cumplir con la sentencia impuesta.
Mientras la peticionaria estaba confinada bajo la custo-dia de la Administración de Corrección en la Escuela Industrial para Mujeres —una institución penal en Vega Al-ta— dicha agencia le notificó su liquidación de sentencia. En ese documento, titulado “Hoja de Control”, se le infor-maron las fechas en las que cumpliría su sentencia y po-dría ser liberada. Según la peticionaria, la liquidación “no refleja como tiempo cumplido de la sentencia los periodos que estuvo detenida en espera de extradición”.![10])
*652 El 20 de mayo de 2010, la peticionaria presentó ante la sala del Tribunal de Primera Instancia que la había sen-tenciado anteriormente una “Moción para que se ordene acreditar preventiva en espera de extradición”, basando sus alegaciones en el Artículo 42 del Código Penal de 1974, entonces vigente,![11]) y la Regla 182 de Procedimiento Criminal.![12]) En particular, solicitó al tribunal que orde-nara al ELA, por conducto de la Administración de Correc-ción, que le acreditara los ciento catorce días que estuvo detenida en Nueva York y los diecisiete días que estuvo detenida en Florida, y que se abonaran o descontaran del cumplimiento de su sentencia.![13]) En esencia, alegó que dichos periodos constituyen términos de cárcel cumplidos a causa de órdenes de arresto relacionadas con el cargo por el que fue convicta eventualmente y cumple sentencia y, por ende, deberían abonarse a la misma.
Según la peticionaria, para que proceda el abono orde-nado por el Artículo 42 del Código Penal de 1974 y la Regla 182 de Procedimiento Criminal, se requieren tres elemen-tos; entiéndase, que la persona haya sido privada de su libertad, que se le acuse y, posteriormente, que ingrese a prisión para cumplir sentencia por los mismos hechos. Se-gún ella, el Estado, en este caso por vía de la Administra-ción de Corrección, está obligado a abonar los días que per-tenezcan al término aludido, sin margen alguno de discreción. Por último, la señora Contreras Severino alega que le corresponde al tribunal sentenciador, y no a la agen-cia administrativa, atender su reclamo y corregir la certi-ficación de liquidación de sentencia.
El 24 de febrero de 2010, el Tribunal de Primera Instan-cia resolvió la “Moción para que se ordene acreditar pre- *653 ventiva en espera de extradición” con un “[a]téngase a Sen-tencia del 27 de agosto de 2002”.([14]) Inconforme, la peticionaria presentó una “Segunda moción para que se ordene acreditar tiempo cumplido en espera de extradición”. Nuevamente, el tribunal de instancia denegó la solicitud, manifestando: “Aténgase a normas del Depar-tamento de Corrección y Rehabilitación de Puerto Rico, haga el planteamiento ante la Junta de Libertad Bajo Palabra. No somos la Juez [a] Sentenciadora. Sentencia final y firme”.([15])
La señora Contreras Severino recurrió al Tribunal de Apelaciones y ese foro denegó el auto de certiorari. Expuso en su resolución que “ [l]e compete a la Junta de Libertad Bajo Palabra, en su día, realizar el abono que corresponde en derecho a favor de la peticionaria, una vez se haga el reclamo correspondiente”.![16]) Para el tribunal apelativo se trataba de una solicitud para enmendar la Sentencia de 27 de agosto de 2002, que era final y firme. Por eso, entendió que carecía de jurisdicción para entrar en los méritos del caso mientras no hubiera alguna determinación de la Junta y se solicitara la revisión judicial. En todo caso, se-gún el tribunal, lo que correspondería sería computar el abono sobre “los años totales de cárcel de la sentencia, es decir, de los treinta (30) años, y no como [la peticionaria] pretende que se haga un descuento directo de la sentencia y así se enmiende”.![17])
En su recurso ante este foro, la señora Contreras Seve-rino aduce que el foro apelativo erró porque la Asamblea Legislativa no delegó a la Junta de Libertad Bajo Palabra la facultad, deber o jurisdicción para computar o acreditar *654 el tiempo durante el cual una persona está detenida preventivamente. La peticionaria sostiene que la agencia encargada del cómputo y manejo de los términos es la Ad-ministración de Corrección. Como ejemplo de ello señala que esa agencia emitió la “Hoja de Control de Liquidación de Sentencia”. No obstante, insiste en que el foro con juris-dicción para adjudicar su reclamo particular es el Tribunal de Primera Instancia ya que lo que ella solicita no es una enmienda a la sentencia original, como concluyó el Tribunal de Apelaciones, sino que el foro primario haga cumplir su sentencia ordenándole a la Administración de Correc-ción que le acredite el tiempo cumplido. La peticionaria insiste que, de sostenerse lo contrario, se le estaría aña-diendo tiempo a su sentencia. ([18])
Sobre el abono del tiempo durante el cual estuvo dete-nida en Nueva York y en Florida, la peticionaria sostiene, en primer lugar, que el artículo 42 del Código Penal de 1974 y la Regla 182 de Procedimiento Criminal ordenan abonar a la sentencia todo el tiempo de privación de liber-tad antes de que recaiga sentencia firme, requiriéndose tan solo que la detención responda a una orden de arresto emitida por un tribunal puertorriqueño y que la persona sea sentenciada por los mismos hechos que motivaron la orden de arresto original. Aduce, además, que esa disposi-ción no distingue entre la detención en una institución co-rreccional de Puerto Rico o, como en su caso, una que esté fuera de la jurisdicción, siempre y cuando se cumplan los requisitos identificados previamente. Tampoco hace dife-rencia que la persona arrestada fuera de la jurisdicción rete su extradición y, por lo tanto, se extienda su detención *655 bajo la custodia de la autoridad extranjera.([19]) Finalmente, alega que el tiempo que estuvo detenida en Florida, como consecuencia de la orden de arresto emitida luego de que abandonara la jurisdicción, también cumple con los requi-sitos del Artículo 42 del Código Penal de 1974 y la Regla 182 de Procedimiento Criminal.
En su comparecencia, el Procurador General coincide con la peticionaria en que la Junta de Libertad Bajo Pala-bra no es el foro con jurisdicción para atender la presente controversia. No obstante, insiste en que le corresponde a la Administración de Corrección, y no al Tribunal de Pri-mera Instancia, adjudicar sus alegaciones. ([20]) Por lo tanto, la señora Contreras Severino debe presentar una solicitud de remedio administrativo ante la agencia y esperar a que ésta tome una decisión final y, si le es adversa, solicitar la revisión judicial. Por otra parte, el Procurador General no disputa directamente la mayoría de los planteamientos de derecho de la peticionaria. Más bien, se limita a argumen-tar que este Tribunal no tiene un expediente completo ante su consideración y no debe adjudicar la controversia en los méritos únicamente a base de las alegaciones de la señora Contreras Severino. Propone, entonces, que se devuelva el caso al foro primario para que la peticionaria pruebe sus *656 alegaciones.([21]) Por último, el Procurador General hace re-ferencia a la discusión que se ha generado en Estados Uni-dos sobre la posibilidad de que una persona acusada que reta su proceso de extradición se pueda beneficiar del abono estatutario.([22])
II
El Artículo 42 del Código Penal de 1974, vigente cuando se dictó sentencia en este caso, disponía que “[a] la persona convicta de delito se le abonarán los términos de detención o reclusión que hubiere sufrido, en la siguiente forma: (a) [e]l tiempo de reclusión sufrido por cualquier convicto desde su detención y hasta que la sentencia haya quedado firme, se abonará en su totalidad para el cómputo de la pena, cualquiera que ésta sea”.([23]) Por su parte, la Regla 182 de Procedimiento Criminal establece que “[e]l tiempo que hubiere permanecido privada de su libertad cualquier persona acusada de cometer cualquier delito público se descontará totalmente del término que deba cumplir dicha persona de ser sentenciada por los mismos hechos por los cuales hubiere sufrido dicha privación de libertad”.([24])
Según explica la Prof. Dora Nevares-Muñiz, el Artículo 75 del Código Penal de 2004, idéntico al Artículo 42 del *657 Código de 1974, “provee para el abono de la pena de los días en que la persona estuvo recluida previo a que su sen-tencia fuera firme o bajo alguna medida de restricción de libertad anulada o revocada”.([25]) Este artículo tiene como propósito “cubrir el tiempo en que el convicto está detenido hasta que la sentencia es firme .. ,”.([26]) En cuanto a la Regla 182 de Procedimiento Criminal, el Informe de Reglas de Procedimiento Penal del Secretariado de la Conferencia Judicial y Notarial de 2008 sugiere que “debe verse en con-junto con el Artículo 75(a) del Código Penal [de 2004] que contiene una disposición análoga”.([27]) Como explica el In-forme, para que apliquen estas disposiciones del Código Penal y las Reglas de Procedimiento Criminal se “impone como requisito que la persona sea sentenciada por los mismos hechos por los que fue privada de su libertad e ingresada en una institución correccional. Si la persona convicta es sentenciada por hechos independientes o delitos ajenos a aquéllos por los que fue restringida de su libertad, no aplicaría la Regla [182 o el artículo correspondiente del Código Penal] y, por ende, no puede abonársele ningún término a su sentencia”.([28])
De lo anterior se infiere que para que una persona tenga derecho a la bonificación establecida por el Código Penal y la Regla 182 de Procedimiento Criminal hace falta que se le prive de su libertad, se le acuse y, posteriormente, se le ingrese para cumplir una sentencia por los mismos hechos por los que se le detuvo en primera instancia.
*658 III
¿Cuál es el foro apropiado para atender situaciones como la de autos? El Tribunal de Apelaciones resolvió que la jurisdicción corresponde a la Junta de Libertad Bajo Palabra. La señora Contreras Severino entiende que el foro debe ser el Tribunal de Primera Instancia, dado que es el responsable de hacer cumplir las Reglas de Procedi-miento Criminal. El Procurador General sostiene que se trata de una responsabilidad delegada a la Administración de Corrección, en primera instancia, y a los tribunales, posteriormente, en revisión judicial.
Mediante la Ley Núm. 118 de 22 de julio de 1974, según enmendada, se creó la Junta de Libertad Bajo Palabra.([29]) El Artículo 3 establece las facultades de esta agencia, que incluyen el poder para otorgar el privilegio de libertad bajo palabra, revocarlo y asesorar al Gobernador sobre solicitudes de clemencia ejecutiva, entre otros.([30]) En cuanto al poder de reglamentación de la Junta, la ley lo limita a lo necesario “para implantar este capítulo”.([31]) No hay nada en la Ley Núm. 118 que faculte a la Junta de Libertad Bajo Palabra para acreditar bonificación alguna a la sentencia de un confinado. Coincidimos con la señora Contreras Severino y el Procurador General en que el Tribunal de Apelaciones erró al resolver que la Junta era la agencia facultada para atender el reclamo de la peticionaria.
La Regla 185 de Procedimiento Criminal es el mecanismo para corregir sentencias penales cuando éstas sean ilegales o tengan algún error de forma. En ambos casos, la corrección se puede hacer “en cualquier *659 momento”([32]) Como explica el Informe sobre las Reglas, elaborado por el Comité de Procedimiento Criminal del Se-cretariado de la Conferencia Judicial y Notarial de 1978, dado que “una sentencia dictada contrario a lo que dispone la ley es nula e inexistente”, la Regla 185 permite corre-girla en cualquier momento y sin límite de tiempo/[33])
Por otra parte, la Regla 192.1 de Procedimiento Criminal establece que cualquier persona que se encuentre detenida a consecuencia de una sentencia dictada por cualquier sala del Tribunal de Primera Instancia, y que alegue el derecho a ser puesta en libertad por cualquiera de las razones dispuestas en la misma Regla, podrá solicitar en cualquier momento a la sala del tribunal que impuso la sentencia que la anule, la deje sin efecto o la corrija/[34]) Las razones establecidas por la Regla 192.1 son: que la sentencia se impuso en violación a la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o la Constitución y las leyes de Estados Unidos; que el tribunal no tenía jurisdicción para imponer dicha sentencia; que la sentencia impuesta excede la pena prescrita por la ley o que la sentencia está sujeta a un ataque colateral por cualquier motivo/[35]) Si el tribunal determina que la sentencia se dictó sin jurisdicción, que la sentencia impuesta excede la pena prescrita por la ley, que por cualquier motivo está sujeta a un ataque colateral o que ha habido tal violación a los derechos constitucionales del solicitante que la hace susceptible de ser atacada colateralmente, el tribunal anulará y dejará sin efecto la sentencia y ordenará que el peticionario sea puesto en libertad o dictará una nueva sentencia u ordenará un *660 nuevo juicio, según proceda/[36]) De ordinario, la Regla 192.1 es el mecanismo que se debe emplear antes de presentar un recurso de hábeas corpus y se puede presentar en cualquier momento, incluso después de que la sentencia impugnada haya advenido final y firme/[37]) Esta Regla “provee uno de los procedimientos que ofrece nuestro ordenamiento para cuestionar la validez de una sentencia dictada”/[38]) En una impugnación de acuerdo con las Reglas 185(a) y 192.1 se analizará la sustancia de la sentencia para determinar su legalidad y validez, mientras que una moción al amparo la Regla 185(b) requiere que el tribunal determine si la sen-tencia adolece de algún error de forma.
La Administración de Corrección tiene como propósito “administra [r el] sistema correccional integrado e [implantar] enfoques para estructurar formas más eficaces de tratamiento individualizado estableciendo o ampliando programas de rehabilitación en la comunidad”([39]) Los poderes y las facultades delegadas a la Administración de Corrección son amplios e incluyen el poder de reglamentación([40]) Entre estas facultades está “[a]dquirir la custodia legal de todo sumariado y sentenciado a confinamiento por orden de un tribunal competente”([41]) De igual forma, la Ley Núm. 116 confiere a la agencia la responsabilidad de administrar los esquemas de bonificaciones, entre éstos las bonificaciones por buena conducta, trabajo y estudios([42]) En particular, el estatuto dispone que la *661 Administración establecerá “el procedimiento que [se] uti-lizará para la concesión, disfrute, suspensión, rebaja y can-celación de los abonos que garantice el debido proceso de ley y para orientar a los confinados sobre los alcances del sistema de bonificación”. ([43]) La Ley Orgánica también le confiere a la agencia el poder para “adoptar reglamentos referentes a la concesión, cancelación y restitución de abo-nos por buena conducta, trabajo y estudios o servicio excep-cionalmente meritorio o de suma importancia, de acuerdo con este capítulo y las normas dispuestas en el nuevo Có-digo Penal del Estado Libre Asociado de Puerto Rico [de 2004T-([44]) Como veremos, el Manual de Procedimientos de la División de Documentos y Récords Penales de la Admi-nistración de Corrección incluye directrices internas de la agencia para el abono por detención preventiva.([45])
El 23 de enero de 2012, el Departamento de Corrección y Rehabilitación aprobó el Reglamento Núm. 8145, Reglamento para Atender las Solicitudes de Remedios Administrativos Radicados por los Miembros de la Población Correccional.([46]) Este Reglamento tiene como objetivo “evitar o reducir la radicación de pleitos en los Tribunales de Justicia”.([47]) La Regla III dispone que “[e]ste Reglamento será aplicable a todos los miembros de la población correccional recluidos en todas las instituciones o facilidades correccionales bajo la jurisdicción del Departa- *662 mentó de Corrección y Rehabilitación ...”.([48]) La Solicitud de Remedio se define en el Reglamento como un “[rjecurso que presenta un miembro de la población correccional por escrito, de una situación que afecte su calidad de vida y seguridad, relacionado con su confinamiento”.([49]) A su am-paro, la agencia tiene facultad “para atender toda Solicitud de Remedio radicada por los miembros de la población co-rreccional en cualquier institución o facilidad correccional donde se encuentre[n] extinguiendo sentencia y que esté ... relacionada directa o indirectamente con: (a) Actos o inci-dentes que afecten personalmente al miembro de la pobla-ción correccional en su bienestar físico, mental, en su se-guridad personal o en su plan institucional[; y] b. [c]ualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento”.([50]) Por otra parte, no habrá jurisdicción en “[c]ualquier otra situación que no cumpla con las disposiciones del presente Reglamento ...”.([51])
Por último, en cuanto al procedimiento para presentar remedios administrativos al amparo del Reglamento, éste establece que se podrán depositar las solicitudes en los bu-zones instalados en cada institución correccional tras ha-ber llenado un Formulario de Solicitud de Remedio Admi-nistrativo en un término no mayor de quince días después de conocer el incidente, salvo que medie justa causa.([52]) En estos casos, la petición será evaluada por un funcionario correccional y, finalmente, la resolverá un Coordinador. Si el miembro de la población correccional está inconforme con la determinación del Coordinador, podrá presentar un recurso de revisión judicial al Tribunal de Apelaciones en *663 un periodo de treinta días, según dispuesto en la Ley de Procedimiento Administrativo Uniforme de Puerto Rico.!([53])
Para facilitar la labor de los técnicos penales que tienen a su cargo los expedientes de la población confinada en Puerto Rico, la Administración de Corrección aprobó el Manual de Procedimientos de la División de Documentos y Récords Penales.![54]) Este Manual establece los procedi-mientos administrativos internos de la agencia para mane-jar los expedientes de los confinados y fue actualizado en el 2007 para cumplir con el nuevo Código Penal y las Reglas de Procedimiento Criminal.![55])
Según dispone el Manual, los oficiales de récords en las instituciones penales tienen la obligación de establecer y conservar de forma individualizada el expediente criminal físico y electrónico de los miembros de la comunidad penal.![56]) De igual forma, tienen la responsabilidad de re-cibir las sentencias, interpretarlas y computarlas, según corresponda.![57]) Entre los documentos que emite la Admi-nistración de Corrección está la Hoja de Control sobre Li-quidación de Sentencias.![58]) Los oficiales de récords tam-bién tienen la responsabilidad de emitir un Certificado de Días Cumplidos en Prisión Preventiva y Certificación de Reclusión Preventiva.![59])
*664 El Manual establece los abonos por detención o términos de reclusión en su Capítulo VIII, titulado Disposiciones Legales Aplicables a las Oficinas de Récords, en el que se hace una referencia directa tanto a la Regla 182 de Procedimiento Criminal como al artículo 42 del Código Penal de 1974.([60]) Por su parte, el Capítulo IX, titulado Manejo de Liquidaciones de Sentencias, atiende el proceso para calcular el tiempo que un confinado tiene que cumplir para poder extinguir su sentencia, incluso el cálculo de las diferentes bonificaciones aplicables. En particular, el Manual establece:
La liquidación de sentencia es el proceso matemático en el cual: [s]e analizan e interpretan todas las sentencias emitidas por un Tribunal competente contra el miembro de la población correccional. Mediante este proceso aplican [las] leyes y reglas de procedimiento criminal [; s]e determina la fecha tentativa en que el miembro de la población correccional cumple su sen-tencia, y cualifica para ser considerado a los beneficios de la libertad bajo palabra u otros programas.([61])
El Manual también hace referencia a los “pasos a se-guir” en la preparación de la Hoja de Liquidación. Entre éstos se encuentran: recibir las sentencias de las secreta-rías de los tribunales, examinarlas, verificar si hay casos pendientes y “verificar si aplica la [detención] preventiva”.([62]) El Manual orienta al oficial de récords sobre cómo anotar esta bonificación en la Hoja de Liquidación. Una vez el oficial ha elaborado la Hoja, la debe aprobar un Supervisor de Récords; finalmente, se le hace llegar al confinado. En cuanto al asunto particular de la bonifica-ción por detención preventiva, el Manual establece que ésta corresponde al “[t]iempo que el acusado permaneció privado de su libertad .... El tiempo de reclusión sufrido *665 por cualquier convicto desde su detención y hasta que la sentencia haya quedado firme, se abonará en su totalidad para el cumplimiento de la pena, cualquiera que ésta sea”.([63])
A diferencia de otras jurisdicciones,([64]) en Puerto Rico, las salas sentenciadoras del Tribunal de Primera Instancia no tienen la obligación de incluir en sus sentencias el término que se debe abonar por la detención preventiva. Claro está, nada impide que lo hagan. Si ese fuera el caso, la bonificación sería parte integral de la sentencia. Ahora bien, ¿qué sucede cuando la sala sentenciadora no hace referencia a la bonificación establecida por la Regla 182 de Procedimiento Criminal? En ese caso, ¿debe la persona convicta presentar una moción al amparo de las Reglas 182(a), 182(b) o 192.1 de Procedimiento Criminal o, por el contrario, debe agotar los remedios administrativos y presentar una solicitud a la Administración de Corrección? Reconocemos que la Regla 182 es un cuerpo normativo dirigido principalmente a los tribunales y que el Reglamento Núm. 8145 no establece con claridad si incluye este tipo de solicitud. Sin embargo, la amplitud de los poderes que la Asamblea Legislativa ha delegado a la Administración de Corrección, así como la indudable pericia de dicha agencia para atender las reclamaciones de la población correccional del país, nos llevan a concluir que es ésta la que debe resolver la reclamación inicial sobre la omisión de incluir la bonificación por detención preventiva en la hoja de liquidación de sentencia. Si la persona confinada está inconforme con la decisión final de la agencia, siempre *666 podrá recurrir a los tribunales a través del recurso de re-visión judicial. No se trata de que los tribunales carezcan de jurisdicción para atender reclamaciones como ésta ni que la Asamblea Legislativa haya otorgado jurisdicción ex-clusiva a la Administración de Corrección. Más bien, reco-nocemos que dicha agencia está en mejor posición para atender solicitudes de esta naturaleza provenientes de la población correccional.
IV
En el caso de autos, la señora Contreras Severino alega que fue arrestada en Nueva York como resultado de una orden emitida por un tribunal puertorriqueño por violar la Ley de Sustancias Controladas, que ejerció su derecho a retar la extradición, y que estuvo ciento catorce días dete-nida en dicho estado hasta que, finalmente, fue extradi-tada a Puerto Rico e ingresada en la prisión. Posterior-mente, fue convicta por los mismos hechos que motivaron la orden de arresto original. Como correctamente señala el Procurador General, ningún foro primario ha adjudicado en los méritos estas alegaciones de la señora Contreras Severino. Según hemos explicado, le corresponde hacerlo a la Administración de Corrección.
Por lo anteriormente expuesto, aunque por fundamen-tos distintos, se confirma la Resolución del Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

(1) Muchas de estas alegaciones se basan en documentos judiciales anejados a la Petición de certiorari. Incluso, el Estado ha aceptado algunas de éstas en su alegato ante este Tribunal. Otras, sin embargo, son aún meras alegaciones de la peticionaria. Iremos identificando las fuentes de las alegaciones en el transcurso de la Opinión.

(2) 24 L.P.R.A. see. 2401.

(3) Minuta del Tribunal de Primera Instancia de 21 de agosto de 2000, Apéndice del Recurso de certiorari, pág. 153.

(4) Recurso de certiorari, pág. 3.

(5) Resolución del Tribunal de Apelaciones, págs. 1-2, Apéndice del Recurso de certiorari, págs. 128-129.

(6) La Minuta del Tribunal de Primera Instancia de 2 de abril de 2002 identifi-caba a la señora Contreras Severino como “confinada”. Apéndice del Recurso de cer-tiorari, pág. 154. Igual ocurrió en la Minuta del 6 de junio de 2002 durante la vista de hábeas corpus.

(7) Minuta del Tribunal de Primera Instancia de 6 de junio de 2002, Apéndice del Recurso de certiorari, págs. 156-158. De dicha Minuta se deducen varios asuntos importantes. En primer lugar, la defensa hizo constar que “en el expediente de Co-rrección no surgen los documentos de cuando su dienta fue arrestada en el estado de [Nueva] York en virtud de una orden de arresto como prófuga de la justicia en el caso de drogas”. íd., pág. 156. En segundo lugar, surge que el propio foro de instancia indagó sobre cuándo se ingresó a la peticionaria, producto de la orden de arresto en el caso de drogas. Por último, se indica que la defensa presentó documentos del estado de Nueva York que indican que la señora Contreras Severino fue arrestada el *651 20 de noviembre de 2001 e ingresada ese mismo día en dicha jurisdicción. Id., pág. 157. Ante ese panorama, el Tribunal de Primera Instancia declaró “con lugar” la petición de hábeas corpus.

(8) Recurso de certiorari, pág. 3.

(9) Sentencia en Ausencia de 27 de abril de 2002, Apéndice del Recurso de certiorari, pág. 159.

(10) Recurso de certiorari, pág. 4. En su solicitud, la peticionaria incluye un documento titulado “Hoja de Control sobre Liquidación de Sentencias” emitido por el Departamento de Corrección y Rehabilitación. El mismo tiene fecha de 10-3-10 y lo firma un técnico de récord. La “Hoja” pormenoriza la sentencia que debe cumplir la señora Contreras Severino e incluye varias anotaciones relacionadas con *652 bonificaciones. Es necesario señalar que el documento no hace referencia al tiempo durante el cual la peticionaria estuvo detenida en Nueva York o en Florida. Apéndice del Recurso de certiorari, pág. 124.

(11) 33 L.P.R.A. ant. see. 3204.

(12) 34 L.P.R.A. Ap. II.

(13) Recurso de certiorari, pág. 4.

(14) Orden del Tribunal de Primera Instancia de 1 de marzo de 2010, Apéndice del Recurso de certiorari, pág. 164.

(15) Orden del Tribunal de Primera Instancia de 13 de julio de 2010, Apéndice del Recurso de certiorari, pág. 170.

(16) Resolución del Tribunal de Apelaciones, pág. 2, Apéndice del Recurso de certiorari, pág. 129.

(17) íd.

(18) En particular, la señora Contreras Severino alega: “El ordenamiento jurí-dico obliga a proceder a acreditarle dicho término de tiempo [abono por detención preventiva], y es el Tribunal sentenciador el que está obligado a velar por el fiel cumplimiento de la sentencia impuesta y las reglas de procedimiento criminal”. Re-curso de certiorari, pág. 11.

(19) La señora Contreras Severino incluyó en el Apéndice de su Recurso de certiorari dos documentos pertinentes a esta controversia. El primero es una carta de la Sra. Minerva Ramos Guevara, Fiscal Auxiliar de la División de Extradiciones del Departamento de Justicia, a la Sra. Nilda Rivera, Técnica de Récord de la Escuela Industrial para Mujeres, en la cual indica que “]l]a demora en [el] traslado [de la peticionaria] hacia Puerto Rico corresponde a su deseo de impugnar el procedi-miento, por lo que este término no se debe considerar como Detención Preventiva”. Apéndice del Recurso de certiorari, pág. 125. El segundo documento es una carta firmada por la misma Fiscal Ramos Guevara dirigida a otra Técnica de Récord Penal, Viviana Rivera Rivera. Esta segunda carta versa sobre otro confinado, Jack Muller Rivera, y aparenta reconocer como detención preventiva abonable el tiempo que éste estuvo en espera de extradición. Apéndice del Recurso de certiorari, pág. 174. Para la peticionaria, esto demuestra que el Estado únicamente abona la deten-ción en el extranjero cuando el acusado no reta la extradición. Según alega, ni el artículo 42 del Código Penal de 1974 (33 L.P.R.A. ant. see. 3204), ni la Regla 182 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, permiten tal distinción. Además, señala que no se le puede penalizar por ejercer su derecho legítimo a retar una extradición.

(20) Para ello, enumera varios casos del Tribunal de Apelaciones en los que se llegó a la misma conclusión.

(21) En ese sentido, el Procurador General alega que la petición de la señora Contreras Severino se asemeja a una opinión consultiva. Alegato del Procurador General, pág. 1. De igual forma, en varias partes de su alegato, el Procurador General insiste en que hace falta devolver el caso para que se desarrolle un expediente.

(22) En su Alegato, el Procurador General hace referencia a la jurisprudencia conflictiva sobre este asunto en los tribunales estatales en Estados Unidos.

(23) 33 L.P.R.A. ant. see. 3204. Por su parte, el Artículo 75 del Código Penal de 2004 (33 L.P.R.A. see. 4703) contiene una disposición idéntica.

(24) 34 L.P.R.A. Ap. II. Por otra parte, la Regla 183 de Procedimiento Criminal dispone que “[e]l tiempo que hubiere permanecido privada de su libertad cualquier persona mientras estuviere pendiente un recurso de apelación incoado contra la sentencia se descontará totalmente del término de prisión que deba cumplir dicha persona como consecuencia de dicha sentencia al ser ésta confirmada o modificada”. 34 L.P.R.A. Ap. II.

(25) D. Nevares-Muñiz, Derecho Penal puertorriqueño: parte general, 5ta ed. rev., Hato Rey, Ed. Inst, para el Desarrollo del Derecho, 2005, pág. 388.

(26) D. Nevares-Muñiz, Nuevo Código Penal de Puerto Rico, Hato Rey, Ed. Inst. para el Desarrollo del Derecho, 2005, pág. 108. La autora hizo el mismo análisis al amparo del Artículo 42 del Código Penal de 1974. Véase D. Nevares-Muñiz, Código Penal de Puerto Rico: revisado y comentado, Hato Rey, Ed. Inst, para el Desarrollo del Derecho, 2000, pág. 82.

(27) Secretariado de la Conferencia Judicial y Notarial, Informe de Reglas de Procedimiento Penal, Tribunal Supremo de Puerto Rico, diciembre de 2008, pág. 642.

(28) Id. Igual ocurre con la Regla 183 de Procedimiento Criminal. Id., pág. 643.

(29) 4 L.P.R.A. see. 1501 et seq.

(30) 4 L.P.R.A. sec. 1503(g).

(31) íd.

(32) 34 L.P.R.A. Ap. II.

(33) Secretariado de la Conferencia Judicial y Notarial, Informe sobre las Reglas de Procedimiento Criminal, Tribunal Supremo de Puerto Rico, 1978, pág. 238, citando a Pueblo v. Lozano Díaz, 88 D.P.R. 834 (1963). Véase, además, Pueblo v. Casanova Cruz, 117 D.P.R. 784, 786 (1986).

(34) 34 L.P.R.A. Ap. II.

(35) íd.

(36) Regla 192.1(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

(37) Véanse: Pueblo v. Román Mártir, 169 D.P.R. 809 (2007); Quiles v. Del Valle, 167 D.P.R. 458, 469-470 (2006); U.P.R. v. Merced Rosa, 102 D.P.R. 512 (1974).

(38) (Énfasis suplido). Pueblo v. Ruiz Torres, 127 D.P.R. 612, 614 (1990).

(39) Ari 4 Je la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. sec. lili.

(40) 4 L.P.R.A. see. 1112.

(41) 4 L.P.R.A. see. U12(ñ).

(42) Véanse, por ejemplo: las bonificaciones por buena conducta, trabajo y estudios. Subcapítulo VIII de la Ley Orgánica de la Administración de Corrección, 4 L.P.R.A. see. 1161 et seq.

(43) 4 L.P.R.A. sec. 1163(e).

(44) (Énfasis suplido). 4 L.P.R.A. see. 1165, añadido mediante la Ley Núm. 315 de 15 de septiembre de 2004.

(45) Véase, además, el ya derogado Reglamento sobre Bonificación por Buena Conducta y Asiduidad Observada por los Confinados de las Instituciones Penales, Reglamento Núm. 1864 de 5 de noviembre de 1974.

(46) Éste es la versión más reciente en una serie de Reglamentos que atienden el procedimiento para canalizar las solicitudes de remedios administrativos de la población correccional. Véase, por ejemplo, Reglamento Núm. 7641 de 19 de diciembre de 2008. Es importante destacar que este Reglamento está sujeto a la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico.

(47) Reglamento para Atender las Solicitudes de Remedios Administrativos Ra-dicados por los Miembros de la Población Correccional, Reglamento Núm. 8145 de 23 de enero de 2012, pág. 2.

(48) íd., pág. 4.

(49) íd., pág. 7.

(50) (Énfasis suplido). íd., Regla VI(l)(a) y (b), pág. 10.

(51) íd., Regla VT(2)(g), pág. 12.

(52) íd., Regla XII(l), (3) y (4), págs. 20-21.

(53) 3 L.P.R.A. see. 2172; Reglamento Núm. 8145, Regla XV.

(54) Se trata de un reglamento no legislativo firmado el 12 de julio de 2007 por el entonces Secretario del Departamento de Corrección y Rehabilitación Miguel A. Pereira Castillo. El Manual dispone que, “para efectos del presente Manual],] donde lea Administración de Corrección se podrá entender Departamento de Corrección y Rehabilitación y viceversa”. Manual de Procedimientos de la División de Documen-tos y Récords Penales, pág. ii. No se trata del primer Manual aprobado por la agencia para esos fines. En su parte introductoria, el documento hace referencia al Manual de Procedimientos para la Unidad de Récords de 1976.

(55) Manual de Procedimientos de la División de Documentos y Récords Penales, pág. i.

(56) íd., pág. 8.

(57) íd., pág. 9.

(58) Existen tres formularios de este documento, según sea el caso. íd., pág. 12. El documento que presentó la señora Contreras Severino corresponde a uno de esos formularios (AC-PIP-1231.b).

(59) íd., pág. 13.

(60) íd., págs. 97, 98 y 113.

(61) íd., pág. 115.

(62) íd., pág. 117. En cuanto a ésta, el Manual dispone que “[l]a preventiva se toma desde la fecha de admisión al [SJistema Correccional y no de la Orden de Ingreso; ésta se saca día a día”. íd., pág. 118.

(63) (Énfasis suplido). íd., pág. 134.

(64) Véase, por ejemplo, In re Watson, 19 Cal. 3d 646 (1977, California). Como se deduce de este caso, en el estado de California es responsabilidad de la sala senten-ciadora del Tribunal de Primera Instancia incluir en la misma sentencia las bonifi-caciones por detención preventiva, incluso aquellas detenciones que ocurren en el extranjero mientras se dilucida el proceso de extradición. Id., pág. 648. Ese deber del tribunal surge del Código Penal estatal. Por otra parte, le corresponde a la agencia correccional añadir la bonificación por el tiempo que la persona esté presa desde la sentencia hasta su ingreso en la institución en la que cumplirá la pena.